United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 6, 2003**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 02-30793

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JAMES HAYES,

Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Louisiana

Before KING, Chief Judge, HIGGINBOTHAM and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

James Hayes ("Hayes," aka Candy Man) appeals his conviction for conspiring to distribute more than fifty grams of cocaine base ("crack cocaine") in violation of 21 U.S.C. §§ 841(a)(1) and 846. On appeal, Hayes argues that (1) his prior felony convictions do not render him a career offender under the Sentencing Guidelines; (2) there was insufficient evidence to support a finding that he conspired to distribute more than fifty grams of crack cocaine; and (3) the district court erred in admitting evidence of a crack cocaine sale that occurred while he was incarcerated. For the following reasons, we affirm in part and reverse in part.

<u>FACTUAL AND PROCEDURAL BACKGROUND</u>

On November 2, 2001, Hayes and his brother, Darrick Hayes ("Darrick") were charged by indictment with: (1) conspiracy to distribute more than fifty grams of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 846, and (2) distribution of more than five grams but less than fifty grams of cocaine base in violation of 21 U.S.C. § 841(a)(1).[1] Hayes pled not guilty to the charges, but Darrick pled guilty to the charges without a plea agreement. Hayes proceeded to a jury trial.

At trial, the Government principally relied on the testimony of informant, John Carter ("Carter"). Carter testified that on May 15, 2001, in cooperation with the Drug Enforcement Administration ("DEA"), he purchased crack cocaine from Hayes and Darrick, whom he had known for several years. According to Carter, he unintentionally ran into Darrick at an audio store, at which time he informed Darrick that he wished to purchase two ounces of crack cocaine. Darrick told him that a friend was holding his crack cocaine and that he would get back in touch with him later. Carter then told Darrick that he was going home to retrieve the money but he actually met with a DEA agent to make sure that it was all right to make a buy from Darrick.

Darrick called Carter fifteen or twenty minutes later and told him to meet Hayes at their mother's house at 1209 Apple Street. When Carter arrived at 1209 Apple Street, Hayes came outside and was talking to Darrick on a cordless phone. After Hayes showed Carter the drugs, Carter told Hayes that the amount was "short," at which time Hayes handed the phone to him. Carter then told Darrick that the amount of drugs was "short" and Darrick told him that a scale was unavailable. In response, Carter told Darrick that he was going home to retrieve his scale. Darrick then told Carter

_____

[1]Darrick was also charged with knowingly and intentionally distributing more than five but less than fifty grams of crack cocaine in violation of § 841(a)(1).

to take the drugs with him and to bring the money back if the weight was correct or to bring the drugs back if the weight was incorrect. Hayes gave Carter the crack cocaine. Carter took the drugs to a DEA agent and delivered the money to Darrick at the audio store. The net weight of the crack cocaine was 45.2 grams. On March 23, 2001, Hayes was incarcerated on unrelated charges. On July 26, 2001, while Hayes was still incarcerated, Carter purchased 46.8 grams of crack cocaine from Darrick at 1209 Apple Street.

During the trial, Michael Magee ("Magee") testified that he sold crack cocaine and marijuana to Hayes on three occasions at 1209 Apple Street, as recently as November 2000. Magee further testified that he knew that Hayes resold the crack cocaine that he purchased from him because he witnessed him selling it on Apple Street several times. Hayes testified that he had purchased and resold the drugs he bought from Magee, however, he maintained that he purchased the drugs three or four years earlier.

Hayes was convicted by a jury of (1) conspiracy to distribute more than fifty grams of crack cocaine and (2) distribution of more than five grams but less than fifty grams of crack cocaine. Following the jury's conviction, Hayes moved for a judgment of acquittal, arguing that the jury's verdict should be set aside because the indictment charged him with conspiracy to distribute more than fifty grams of crack cocaine but only 45.2 grams of crack cocaine were admitted into evidence. Specifically, Hayes argued that he did not conspire with Darrick on July 26th to distribute the crack cocaine sold to Carter. The district court denied Hayes' motion for acquittal.

According the pre-sentence report ("PSR"), Hayes qualified as a career offender because he had two prior felony convictions for distribution of cocaine and armed robbery. The PSR reveals that Hayes was arrested for cocaine distribution on December 23, 1993 and sentenced on September 19,

3

1994, to twenty-five years, with twenty years suspended. On the same date, Hayes was also sentenced for armed robbery and being an accessory after the fact to purse snatching occurring on December 22, 1993. Hayes' sentences for armed robbery and being an accessory after the fact to purse snatching were to be served concurrently with his sentence for cocaine distribution. The PSR calculated his total offense level at 37 under § 4B1.1, resulting in a guideline range of 360 months to life in prison. Hayes did not object to the PSR. The district court sentenced Hayes to serve 360 months in prison on each count to run concurrently. Hayes filed a timely notice of appeal.

DISCUSSION

Hayes raises three arguments on appeal. First, Hayes argues that the district court erred in holding that he was a career offender under § 4B1.1. Second, Hayes argues that there was insufficient evidence to convict him for conspiracy to distribute more than fifty grams of crack cocaine. Third, Hayes argues that the district court abused its discretion in admitting evidence of the July 26, 2001 crack cocaine buy between Carter and Darrick.

I.      Career-Offender Enhancement

Hayes argues that his prior convictions did not render him a career offender under § 4B1.1. of the Sentencing Guidelines. Because Hayes failed to object to the enhancement, his claim is subject to plain error review. To demonstrate plain error, Hayes must show that (1) there was an error, (2) the error was clear and obvious, and (3) the error affected the defendant's substantial rights. United States v. Calverley, 37 F.3d 160, 162-64 (5th Cir. 1994) (en banc).

Section 4B1.1. provides that "[a] defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance

offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." Hayes argues that his two prior felony convictions are related and should not be counted separately for career offender purposes. Specifically, Hayes argues that his prior felony convictions were related because: (1) they were not separated by an intervening arrest, and (2) a "de facto" consolidation may have occurred. "If [Hayes'] prior convictions constitute 'related cases' within the meaning of [] § 4A1.2(a)(2), they will not be treated separately for career offender purposes." United States v. Kates, 174 F.3d 580, 584 (5th Cir. 1999). The guideline commentary observes that:

> Prior sentences are not considered related if they were for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense). Otherwise, prior sentences are considered related if they resulted from offenses that (1) occurred on the same occasion, (2) were part of a single common scheme or plan, or (3) were consolidated for trial or sentencing.

U.S.S.G. § 4A.1.2, comment (n.3).

After reviewing the Sentencing Guidelines and the caselaw interpreting them, we reject Hayes' arguments that his prior convictions are related. The fact that his prior convictions were not separated by an intervening arrest does not make them related within the meaning of § 4A1.2(a)(2). Hayes points to the above-referenced commentary which states that "[p]rior sentences are not considered related if they were for offenses that were separated by an intervening arrest." Hayes argues that the opposite must be true, i.e. that prior convictions are related if they were not separated by an intervening arrest. Although this Court has yet to address this issue, the Seventh Circuit in United States v. Goudy rejected the same argument:

> Besides being illogical, [the defendant's] argument [that prior offenses are related if they are not separated by an intervening arrest] ignores the rest of the appropriate

5

> Guideline, specifically the text of § 4A1.2(a)(2), which provides that "prior sentences imposed in unrelated cases are to be counted separately," "as well as the balance of Application Note 3 which requires offenses be considered related only if they (1) occurred on the same occasion, (2) were part of a single common plan or scheme, or (3) were consolidated for trial or sentencing. USSG § 4A1.2, comment.

78 F.3d 309, 315 (7th Cir. 1996). We fully adopt the Seventh Circuit's reasoning in rejecting Hayes' claim that his two separate prior convictions were related simply because they were not separated by an intervening arrest.

Hayes further argues that his prior convictions were related because a de facto consolidation may have occurred. See United States v. Huskey, 137 F.3d 283, 288 (5th Cir. 1998) (holding that a de facto consolidation occurred by virtue of the fact that the charges appeared in the same criminal information under the same docket number). Hayes highlights the fact that his sentences were consolidated for sentencing purposes and were ordered to be served concurrently. Hayes asks this Court to remand his case to permit supplementation of the record on this issue. We deny Hayes' request. In United States v. Metcalf, this Court rejected a defendant's contention that his two prior cases were consolidated for sentencing because they were disposed of on the same day, the sentences were for the same duration, and they were ordered to run concurrently. 898 F.2d 43, 46 (5th Cir. 1990). The Court in Metcalf noted the following:

> [I]n United States v. Flores, we rejected an assertion that cases are consolidated for sentencing under the Guidelines "simply because two convictions have concurrent sentences. Moreover, we do not believe that sentencing on two distinct cases on the same day necessitates a finding that they are consolidated. Here, the [two] offenses proceeded to sentencing under separate docket numbers and there was no order of consolidation. The two cases were also not factually tied in any way.

Id.

This case is very similar to Metcalf. Hayes' prior felony offenses were under separate docket

6

numbers and there is no factual relationship between the offenses - one is for cocaine distribution and the others are for armed robbery and being an accessory after the fact to purse snatching. Moreover, Hayes received concurrent but different sentences from a single judge. See Kates, 174 F.3d at 584 (noting that "this Court has rejected the proposition that cases must be considered consolidated simply because the convictions have concurrent sentences."). Thus, Hayes' prior felony convictions were clearly not related, rather they were consolidated for sentencing purposes only. The district court did not plainly err in finding Hayes to be a career offender under § 4B1.1.

II.     Sufficiency of the Evidence Challenge

Hayes argues that the evidence is insufficient to support his conviction for conspiracy to distribute more than fifty grams of cocaine base. The standard of review for sufficiency of the evidence is whether any reasonable trier of fact could have found that the evidence established guilt beyond a reasonable doubt. See United States v. Martinez, 975 F.2d 159, 160-61 (5th Cir. 1992). All reasonable inferences from the evidence must be construed in favor of the jury verdict. Id. Determining the weight and credibility of the evidence is within the sole province of the jury. Id. Thus, an appellate court will not supplant the jury's determination of credibility with that of its own. Id.

In a drug conspiracy prosecution, the Government must prove beyond a reasonable doubt: (1) the existence of an agreement between two or more persons to violate narcotics law; (2) the defendant's knowledge of the agreement; and (3) the defendant's voluntary participation in the agreement. See United States v. Gonzalez, 76 F.3d 1339, 1346 (5th Cir. 1996). These elements need not be proved by direct evidence. See United States v. Maltos, 985 F.2d 743, 746 (5th Cir. 1992). The agreement and the defendant's knowledge and participation in the conspiracy may be inferred

7

from "the development and collocation of circumstances." Id.

Although Hayes does not concede that he was involved in the May 15, 2001 transaction, he argues that the Government's evidence at most demonstrated that he conspired with Darrick to distribute 45.2 grams of crack cocaine to Carter on that date. Hayes argues that the conspiracy did not extend beyond that single transaction. The Government relies on the following to support its contention that the conspiracy agreement and the crack cocaine amounts were not limited to the May 15, 2001 transaction:

> 1) Hayes and Darrick knew Carter for several years and entrusted him with the crack cocaine even though he had yet to pay for it.
> 2) Prior to the May 15, 2001 transaction, Hayes often advertised and displayed various amounts of crack cocaine for sale to Carter.[2]

---

[2]The following is the testimony from Carter regarding Hayes' solicitation of crack cocaine:

Q.    Have you ever discussed selling crack cocaine or buying crack cocaine from or with James Hayes, Candy Man?
A.    Yes, sir.
Q.    And was that at the beginning of last year, 2001?
A.    Yes, sir.
Q.    Where did that take place? And please describe to the jury the gist of those conversations.
A.    He used to ride to Ponchatoula and advertise cocaine to try to sell it to me, but I would never buy it from him because I had my own connection. And I would never buy it from him.
Q.    When you say advertise, was he –
A.    Showing it to me, showing me the quantity, the weight.
Q.    Was there, what type of drug was this?
A.    Crack. . .
Q.    And you said before that Mr. Hayes was advertising, correct.
A.    Right.
Q.    Did he actually show you this cocaine, or was he just telling you about it, or was he bragging?
A.    No, he showed it to me.
Q.    What type of amounts did he have on his possession?
A.    When he come here, like two or three ounces, 24, maybe 24 grams apiece.
Q.    At one time?
A.    Yeah.
Q.    What was the price per ounce was Mr. Hayes selling that for or asking you to buy it?
A.    Anywhere from seven to $800.

8

3)    Testimony from Magee which revealed that Hayes sold additional amounts of drugs on Apple Street.[3]

4)    Hayes and Darrick sold crack cocaine as a unit on May 15, 2001.

5)    Hayes and Darrick utilized the Apple Street residence to distribute crack cocaine on both May 15, 2001 and July 26, 2001.

We find the Government's circumstantial evidence insufficient to prove that Hayes was involved in the July 26, 2001 transaction. The only evidence that suggests a wider conspiracy is the fact that both Hayes and Darrick sold crack on Apple Street. This fact, however, does not tie Hayes

---

Q.    That's per ounce?
A.    To buy.

[3]The following is testimony from Magee:

Q.    Have you ever dealt drugs to [James Hayes] or brought drugs from him?
A.    Yes.
Q.    What type of drugs were these?
A.    Crack.
Q.    Crack cocaine?
A.    Crack, pot.
Q.    How many times do you think?
A.    Three times.
Q.    What was the nature or origin, were you selling to him, or was he selling to you or both?
A.    I sold to him.
Q.    You sold to him. What type of amounts did you sell to him?
A.    Quarter of an ounce, half of an ounce.
Q.    How many times?
A.    About total of two or three times. . . .
Q.    Did any of these transactions take place at 1209 Apple Street?
A.    Yes.
Q.    Would they take place inside the residence, outside, where?
A.    Outside the residence. . .
Q.    When was the last time that you sold crack cocaine to James Hayes, Candy Man?
A.    About – I can't say. About a year-and-a-half ago, close to two.

9

to the July 26th transaction.[4] Although there is no requirement that every member must participate in every transaction to find a conspiracy, the evidence in this case is simply too tenuous to establish a conspiracy beyond the May 15, 2001 transaction. In United States v. Turner, this Court relied on evidence of transactions that never materialized to create the inference that the conspiracy involved at least five kilograms of cocaine. 319 F.3d 716, 724 (5th Cir. 2003). Unlike in Turner, there is no evidence that there was an ongoing conspiracy between Hayes and Darrick. Although Magee's testimony establishes that Hayes also sold drugs on Apple Street, it is insufficient to tie Hayes to the July 26, 2001 transaction between Darrick and Carter.[5] Nothing in the record shows that Hayes' individual drug trafficking activities involved Darrick. Thus, the evidence was insufficient to convict Hayes of conspiring to distribute more than fifty grams of crack cocaine.

As a result, Hayes argues that his conviction should be vacated in its entirety and he should be resentenced pursuant to § 841(b)(1)(C). The Government maintains that even if the evidence is insufficient to support his conviction for conspiracy to distribute more than fifty grams, the evidence clearly supports a finding of conspiracy to distribute between five and fifty grams of crack cocaine.

---

[4]Because we find that the conspiracy did not extend beyond the May 15th transaction, we need not decide whether Hayes' arrest terminated his involvement in the conspiracy. See United States v. Killian, 639 F.2d 206, 209 (5th Cir. 1981) (finding that the defendant's arrest did not withdraw him from the conspiracy).

[5]Moreover, the date of Hayes' drug trafficking activities on Apple Street is disputed. The following is Hayes' testimony regarding his relationship with Magee:

Q. Do you recall what [Magee] alleged that you had done over the last two years, two years ago, a year-and-a-half, two years ago? . . .
A. No, I don't know him by the last year, year-and-a-half or two years. But I do know him from back in the days, maybe say three, four years ago of what he was saying by me buying drugs for me, yes. I do know him for maybe three, four years ago but not in a year-and-a-half or two years ago.

10

During oral argument, in response to questioning, Hayes' counsel acknowledged that the court could that the evidence supported a finding of conspiracy for less than fifty grams of crack cocaine. After reviewing the record in detail, we conclude that the evidence clearly establishes that Hayes conspired with Darrick to distribute less than fifty grams of crack cocaine. In fact, the jury in a special verdict form specifically chose the greater amount. The jury also convicted him of distribution of less than fifty grams of cocaine for the May 15, 2001 sale, which formed the basis of his conspiracy. As a result of the foregoing, Hayes' conviction for conspiracy to distribute more than fifty grams of crack cocaine must be reversed, vacated, and remanded for resentencing pursuant to § 841(b)(1)(B) for conspiracy to distribute more than five but less than fifty grams of crack cocaine.[6]

## CONCLUSION

For the foregoing reasons, we REVERSE and VACATE Hayes' conviction for conspiracy to distribute more than fifty grams of crack cocaine and REMAND the case for resentencing pursuant to § 841(b)(1)(B). We AFFIRM the district court's finding that Hayes is a career offender. AFFIRMED IN PART, REVERSED AND REMANDED IN PART.

---

[6]Hayes puts forth an additional argument challenging the admissibility of the July 26, 2001 sale into evidence. We need not reach this issue, because even with the evidence of the July 26, 2001 sale, it was insufficient to support Hayes' conviction.

11