# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-1066

_____

United States of America,

        Appellee,

v.

Miguel Angel Rolon-Ramos, aka
Rogelio Carrillo-Ortiz,

        Appellant.

*
*
*
*
*   Appeal from the United States
*   District Court for the
*   Northern District of Iowa.
*
*
*
*

_____

Submitted: June 11, 2007
Filed: October 1, 2007

_____

Before MELLOY, SMITH, and GRUENDER, Circuit Judges.

_____

SMITH, Circuit Judge.

Miguel Rolon-Ramos was convicted of conspiracy to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846, and aiding and abetting the possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c) and 2(a). The district court denied Rolon-Ramos's motions for judgment of acquittal and subsequently sentenced him to 180 months' imprisonment. After careful consideration, we affirm the convictions, but reverse the drug quantity attributed to Rolon-Ramos, and remand for resentencing.

## I. *Background*[1]

In May 2006, Iowa law enforcement officers were contacted by Donald Steburg, Jr., an Iowa methamphetamine dealer, who told the officers that he wished to cease selling illegal narcotics. Steburg debriefed with law enforcement over the course of two days, providing information regarding his methamphetamine operation and his involvement with, and knowledge of, other dealers and distributors. Steburg informed the officers, among other things, that: (1) his primary methamphetamine supplier was Julio Garcia-Hernandez—known to Steburg as "Cholo"; (2) he had purchased multiple pounds of methamphetamine from Garcia-Hernandez over the course of several months; (3) Garcia-Hernandez sold him methamphetamine for $6,000 per half pound and $12,000 per pound; (4) he owed Garcia-Hernandez approximately $6,000 for previously fronted drugs; and (5) Garcia-Hernandez's cousin, Jose Deluna-Ponce, often delivered drugs and collected drug debts on Garcia-Hernandez's behalf.

With this information, and Steburg's assistance, the Tri-State Drug Task Force ("the Task Force") attempted to set up a controlled methamphetamine purchase from Garcia-Hernandez. Steburg placed a monitored phone call to Garcia-Hernandez to arrange a meeting at Garcia-Hernandez's trailer on June 13, 2005. Task Force Agent John Howard, posing as Steburg's "money man," accompanied Steburg to meet Garcia-Hernandez. Upon their arrival, Steburg and Garcia-Hernandez went inside the trailer while Agent Howard remained in Steburg's car. Once inside, Garcia-Hernandez demanded payment of the drug debt Steburg owed him. Steburg replied that the man in the car—the undercover agent—could provide the money to pay off the debt, but that Garcia-Hernandez would have to front him additional methamphetamine. No drugs were sold. Instead, Garcia-Hernandez instructed Steburg to retrieve the money he owed and meet him later that day at the Jo-Mart Motel in Denison, Iowa.

---

[1]Because Rolon-Ramos challenges the sufficiency of the evidence, we present the facts in the light most favorable to the verdict. *United States v. Cannon*, 475 F.3d 1013, 1016 (8th Cir. 2007).

Steburg and Agent Howard drove to the motel, which was already under surveillance. Deluna-Ponce met them in the parking lot and led Steburg to a motel room, while Agent Howard waited in the car. Steburg, wearing electronic monitoring devices, and Deluna-Ponce entered the motel room; Garcia-Hernandez, and a pony-tailed man—later identified as defendant Rolon-Ramos—were already inside.[2] As Steburg approached Garcia-Hernandez, he noticed that Garcia-Hernandez had a handgun beside him. Upon seeing the gun, Steburg turned to exit the room, but Garcia-Hernandez uttered something in Spanish, and Deluna-Ponce and Rolon-Ramos shut and locked the motel room door and stood in front of it, blocking the exit. When Steburg turned back around, Garcia-Hernandez was pointing the gun at him and demanding the money owed to pay off the debt. After Steburg convinced Garcia-Hernandez that the money was in his car, Garcia-Hernandez allowed Steburg to exit the motel room to retrieve the money, but required Steburg to leave his cell phone in the room to ensure his return. Once Steburg returned to his vehicle, however, he informed Agent Howard that Garcia-Hernandez had a gun and that he refused to return inside. Steburg and Agent Howard then departed from the motel.

Shortly after Steburg's departure, surveillance officers witnessed Rolon-Ramos exit the motel room and walk toward the front of the motel. One of the surveillance officers testified that Rolon-Ramos held his right elbow close to his right side as he walked, as if he were hiding something at his waist. Due to obstructed views, the surveillance officers could not see where Rolon-Ramos went, but he returned to the motel room approximately two minutes later. A short time thereafter, Rolon-Ramos again left the room, walking away from the motel in the opposite direction. Police

---

[2]Steburg had never seen Rolon-Ramos before he entered the motel room.

arrested Rolon-Ramos a short distance from the motel with a small amount[3] of methamphetamine in his possession.

Meanwhile, back at the motel, Task Force Agent Mark Minten received a cell phone call from Steburg's cell phone. Agent Minten knew that Steburg had left his phone with Garcia-Hernandez and Deluna-Ponce inside the motel room, so he answered the phone feigning drug involvement. He asked, "Hey, did you get my stuff?" The caller, who identified himself as "Cholo"—Garcia-Hernandez's known alias—told Agent Minten that Steburg owed him too much money and that he would not provide any more drugs to Steburg until the debt was paid. Agent Minten told Cholo that he had $2,000, and Cholo agreed to sell him two ounces of "ice" or crystal methamphetamine for that amount. Agent Minten told Cholo that he was in another town but that he would try to contact someone to drop off the money and pick up the drugs. Cholo told Agent Minten to call him back and gave Agent Minten a phone number that matched the number that Steburg used to contact Garcia-Hernandez.

Garcia-Hernandez and Deluna-Ponce were subsequently arrested as they attempted to drive away from the motel room. Police found no contraband in their possession. A search of the motel room uncovered small amounts[4] of methamphetamine hidden in a loaf of bread and inside a shoe. No firearm was ever located.

Rolon-Ramos, Garcia-Hernandez, and Deluna-Ponce were all charged with conspiracy to distribute 500 grams or more of methamphetamine and possession or

---

[3]The record is unclear as to the exact amount of methamphetamine recovered from Rolon-Ramos, but the government concedes that it was a "small" amount consistent with personal use, not distribution.

[4]Again, the record is unclear as to the exact amount of methamphetamine recovered from the motel room, but the government concedes that it was a "small" amount consistent with personal use, not distribution.

aiding and abetting the possession of a firearm in connection with a drug trafficking crime. Deluna-Ponce pleaded guilty to the charges, and Rolon-Ramos and Garcia-Hernandez chose to go to trial and were tried jointly.

At trial, Steburg and another cooperating witness, Jason Bolden, each testified that: (1) Garcia-Hernandez had sold them multiple pounds of methamphetamine for further distribution; (2) Garcia-Hernandez often fronted them the drugs; and (3) Deluna-Ponce often delivered the drugs and collected the money for the drugs. Steburg also testified about the events at the Jo-Mart Motel on June 13, 2006. Neither Rolon-Ramos, Garcia-Hernandez, nor Deluna-Ponce testified. The government connected Rolon-Ramos to the conspiracy through his presence and activities at the motel on June 13, 2006.

At the conclusion of the government's evidence, Rolon-Ramos moved for a judgment of acquittal, which the court denied. The jury convicted Rolon-Ramos and Garcia-Hernandez of both charges. Following the verdict, Rolon-Ramos again moved for a judgment of acquittal. After a hearing on the motion, the court ruled that sufficient evidence permitted a reasonable jury to conclude that: (1) there was a drug conspiracy; (2) Rolon-Ramos voluntarily joined the conspiracy; (3) there was a gun used in connection with the conspiracy; and (4) Rolon-Ramos aided and abetted the possession of the firearm in furtherance of a drug trafficking crime.

## II. *Discussion*

Rolon-Ramos challenges the sufficiency of the evidence on both convictions. "We review the sufficiency of the evidence de novo, viewing evidence in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict." *United States v. Bower*, 484 F.3d 1021, 1025 (8th Cir.2007) (internal quotations and citation omitted). "We will only reverse the defendant's conviction if no reasonable jury could have found the

defendant guilty beyond a reasonable doubt." *Id.* (internal quotations and citation omitted).

A. *Conspiracy to Distribute 500 grams or More of Methamphetamine*

Count I of the indictment charged Rolon-Ramos with conspiracy to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841 and 846. "To establish that a defendant conspired to distribute drugs under 21 U.S.C. § 846, the government must prove: (1) that there was a conspiracy, i.e., an agreement to distribute the drugs; (2) that the defendant knew of the conspiracy; and (3) that the defendant intentionally joined the conspiracy." *United States v. Jiminez*, 487 F.3d 1140, 1146 (8th Cir. 2007). "The conspiracy's existence may be proved by direct or circumstantial evidence." *United States v. Cain*, 487 F.3d 1108, 1111 (8th Cir. 2007). "But a defendant's mere presence, coupled with the knowledge that someone else who is present intends to sell drugs, is insufficient to establish membership in a conspiracy." *United States v. Jimenez-Villasenor*, 270 F.3d 554, 558 (8th Cir. 2001) (internal quotations and citation omitted). "[W]hile a defendant's role in a conspiracy may be minor, the government must offer enough evidence to prove a defendant's connection to a conspiracy beyond a reasonable doubt before a conspiracy conviction can be upheld." *United States v. Lopez*, 443 F.3d 1026, 1028 (8th Cir. 2006) (en banc). "When reviewing the sufficiency of the evidence to support a conspiracy conviction, we will affirm if the record, viewed most favorably to the government, contains substantial evidence supporting the jury's verdict, which means evidence sufficient to prove the elements of the crime beyond a reasonable doubt." *Id.* at 1030.

The evidence presented at trial showed that: (1) Garcia-Hernandez and Deluna-Ponce were involved in a methamphetamine distribution conspiracy; (2) Rolon-Ramos was inside the motel room with Garcia-Hernandez and Deluna-Ponce when Steburg entered the motel room on June 13, 2006; (3) Rolon-Ramos and Deluna-Ponce shut and locked the motel room door and blocked the exit preventing Steburg from leaving

the room as Garcia-Hernandez pointed a gun at Steburg demanding payment for a drug debt; (4) Rolon-Ramos left the motel room walking suspiciously as if he were carrying something at his waist; and (5) upon his arrest Rolon-Ramos was in possession of a small quantity of methamphetamine. This evidence, viewed in the light most favorable to the verdict, is sufficient to support Rolon-Ramos's conviction for conspiring with Garcia-Hernandez and Deluna-Ponce to distribute methamphetamine.

We find, however, that the evidence is wholly insufficient to connect Rolon-Ramos to a conspiracy to distribute 500 grams or more of methamphetamine. But, because "drug quantity is not an essential element of a conspiracy offense," *United States v. Jones*, 195 F.3d 379, 383 (8th Cir. 1999), we reverse only to the drug quantity attributed to Rolon-Ramos, as there was sufficient evidence to support Rolon-Ramos's conspiracy conviction under 21 U.S.C. §§ 841(a)(1) and 846. *See United States v. Hayes*, 342 F.3d 385, 391–92 (5th Cir. 2003) (reversing defendant's conviction for conspiracy to distribute more than 50 grams of crack cocaine because evidence did not support that quantity, and remanding with instructions to resentence defendant for conspiracy to distribute more than 5 grams but less than 50 grams of crack cocaine).

The government contends that Rolon-Ramos's actions inside the motel room, in conjunction with Garcia-Hernandez's conversations with Steburg regarding the unpaid drug debt, sufficiently established that Rolon-Ramos was knowingly involved in the conspiracy to distribute at least 500 grams of methamphetamine. The government, however, failed to establish that actual methamphetamine amounts or the amount of the debt owed by Steburg to Garcia-Hernandez were ever discussed in Rolon-Ramos's presence. Further, Steburg testified that he owed Garcia-Hernandez approximately $6,000 and that Garcia-Hernandez charged him $6,000 for one-half

pound[5] of methamphetamine. Thus, even if these amounts were discussed in front of Rolon-Ramos, it would still be insufficient to support the jury's finding that Rolon-Ramos was knowingly involved in a conspiracy to distribute 500 grams or more of methamphetamine or substance containing methamphetamine.

In addition, all conversations between Steburg and Garcia-Hernandez, including those in Rolon-Ramos's presence, were conducted in English, and there is no evidence in the record that Rolon-Ramos, who used a Spanish interpreter at trial, could speak or understand English.[6] *See United States v. Fitz*, 317 F.3d 878, 882 (8th Cir. 2003) (reversing defendant's conspiracy conviction for insufficient evidence, noting that all conversations between the confidential informant and coconspirator in the defendant's presence were conducted in English, and that there was no evidence that defendant, who used an interpreter during trial, could speak or understand English).

The government also contends that the phone call made by Garcia-Hernandez from Steburg's cell phone to Agent Minten, wherein methamphetamine transactions were discussed, was sufficient to attribute at least 500 grams of methamphetamine to Rolon-Ramos. But the government failed to present any evidence that an agreement to distribute more than 500 grams of methamphetamine was reached during that phone call and failed to establish that Rolon-Ramos was in the motel room when that phone call took place.[7]

---

[5]One pound is approximately equal to 453.592 grams; half of one pound is approximately equal to 226.796 grams.

[6]Steburg testified that he could not speak Spanish and that all of his conversations with Garcia-Hernandez were spoken in English. Steburg also testified that he had never heard Rolon-Ramos speak, and the only time he heard Garcia-Hernandez speak to Rolon-Ramos, he did so in Spanish.

[7]Again, even if Rolon-Ramos was present, there is no evidence that he could have comprehended the conversation. *Fitz*, 317 F.3d at 882.

Here, the indictment charged Rolon-Ramos with conspiracy to distribute at least 500 grams of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1), and 846, and the jury convicted him of that count.[8] Section 841(a)(1) makes it unlawful to, among other things, distribute a controlled substance, and § 846 makes it unlawful to conspire to commit an offense under § 841(a). Neither § 841(a) nor § 846 requires any specific quantity for conviction, rather the penalties for violations of those sections are set forth by § 841(b) and depend on the substance and quantity involved, as well as the defendant's prior convictions. 21 U.S.C. § 841(b); *United States v. Aguayo-Delgado*, 220 F.3d 926, 930 (8th Cir. 2000). Thus, Rolon-Ramos's conviction for conspiracy to distribute methamphetamine under §§ 841(a) and 846 is not invalidated by our conclusion that the evidence does not support the drug quantity determination. *See Hayes*, 342 F.3d at 391–92; *see also United States v. Gomez-Rosario*, 418 F.3d 90, 104 (1st Cir. 2005) (finding that because no specific drug quantity needs to be proven for a jury to convict a defendant under § 841(a), a defendant may be found guilty of the crime charged, but responsible for a lesser quantity of drugs than that specified in the indictment).

---

[8]Although, the government indicted the defendant on conspiracy to distribute more than 500 grams of methamphetamine, Jury Instruction No. 14 specifically instructed the jury that it should first decide if the defendant was guilty of a drug conspiracy and then, if it found the defendant guilty, to determine the quantity of methamphetamine involved. Jury Instruction No. 14 also informed the jury that even though the indictment charged a specific quantity of methamphetamine, the government was not required to prove the conspiracy involved the amount of drugs charged. Further, the court used a jury verdict form which set out the issues in that order as well, asking the jury first to determine whether it found the defendant guilty of a conspiracy to distribute methamphetamine, and second, if so, whether the amount of methamphetamine involved was over 500 grams or between 50 and 500 grams. We have previously found no error or abuse of discretion in instructing the jury and submitting the issues to it in this manner. *See United States v. Harris*, 310 F.3d 1105, 1110 (8th Cir. 2002).

While Rolon-Ramos's involvement in the methamphetamine distribution conspiracy can be inferred from the evidence presented, none of the inferences reasonably drawn from the evidence established that Rolon-Ramos was involved with, participated in, or could have reasonably foreseen a distribution conspiracy involving more than 500 grams of methamphetamine. As a result, Rolon-Ramos's conviction for conspiracy to distribute methamphetamine is affirmed, but the methamphetamine quantity determination must be reversed and his sentence vacated, and we will remand for resentencing on the drug quantity issue.

## B. *18 U.S.C. § 924(c)*

Rolon-Ramos also challenges the sufficiency of the evidence supporting his conviction under Count II of the indictment, for aiding and abetting the possession of a firearm in furtherance of a drug trafficking crime under 18 U.S.C. §§ 924(c)( 2). Section 924(c) imposes a mandatory minimum five-year sentence on "any person who, during and in relation to any . . . drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm . . . ." A "drug trafficking crime" includes "any felony punishable under the Controlled Substances Act (21 U.S.C. 801 et seq.)." 18 U.S.C. § 924(c)(2).

Rolon-Ramos was not charged with personally possessing the firearm in furtherance of the conspiracy; he was charged with aiding and abetting Garcia-Hernandez's possession of the firearm in furtherance of the conspiracy. One who aids or abets the possession of a firearm in furtherance of a drug trafficking crime is punishable as the principal. 18 U.S.C. §§ 2(a), 924(c). Thus, if we determine that there was sufficient evidence to support the jury's finding that Garcia-Hernandez possessed the firearm in furtherance of the drug conspiracy and that Rolon-Ramos's actions aided and abetted that possession, we will affirm Rolon-Ramos's conviction under § 924(c).

-10-

To establish that Garcia-Hernandez was guilty of violating § 924(c), the government had to establish that: (1) he committed a drug trafficking crime, and (2) he possessed a firearm in furtherance of that crime. 18 U.S.C. § 924(c). For purposes of this case,[9] we believe that sufficient evidence existed to prove Garcia-Hernandez was guilty of conspiring to distribute at least 500 grams of methamphetamine. Steburg and Bolden both testified that they had each purchased multiple pounds of methamphetamine from Garcia-Hernandez for resale, and both testified that Deluna-Ponce often delivered methamphetamine and collected drug debts on Garcia-Hernandez's behalf. Viewing this evidence in the light most favorable to the verdict in Rolon-Ramos's case, we find that there was sufficient evidence for the jury to believe that Garcia-Hernandez was guilty beyond a reasonable doubt of conspiring to distribute at least 500 grams of methamphetamine. This drug distribution is a "drug trafficking crime," as it is a felony punishable under the Controlled Substances Act. 18 U.S.C. § 924(c)(2); 21 U.S.C. §§ 841, 846.

The issue of whether Garcia-Hernandez possessed a firearm in furtherance of the drug conspiracy is more difficult. First, despite having the motel under surveillance on the date the firearm was allegedly possessed, law enforcement officers did not recover a firearm from any of the alleged conspirators, the motel, or Garcia-Hernandez's vehicle. Second, although Steburg was wearing a wire while inside the motel room, the officer monitoring the wire-transmitted conversation never heard Steburg nor anyone else in the motel room mention or refer to a firearm. On the other hand, Steburg testified that Garcia-Hernandez possessed a firearm, described the firearm, and testified that Garcia-Hernandez pointed the firearm at him while demanding payment for the drug debt Steburg owed him. Additionally, the undercover agent that was waiting inside Steburg's vehicle testified that Steburg told him that

---

[9]Due to delays in Garcia-Hernandez's sentencing, his individual appeal was only recently filed with this court. Our discussions of Garcia-Hernandez's conviction in this case has no bearing on the review of Garcia-Hernandez's conviction and sentence on his appeal.

Garcia-Hernandez had a gun when he returned to the vehicle from the motel room. Furthermore, the officer that monitored the wire-transmitted conversations testified that although a gun was not mentioned, based upon what he heard from the audio transmissions, he believed that a heated argument was taking place inside the room and that Steburg sounded scared. Moreover, the officer testified that he became so concerned for Steburg's safety that he moved his vehicle to a closer position to prepare for a possible rescue.

Viewing this evidence in the light most favorable to the verdict, we find that there was sufficient evidence to prove that Garcia-Hernandez possessed a firearm inside the motel room. Because no firearm was located, the government had to rely on Steburg's testimony regarding Garcia-Hernandez's possession of the firearm, along with the other witnesses' corroborating testimony. The jury heard this testimony and, based on its verdict, found it credible. We must defer to the jury's determinations on issues of credibility. *United States v. Thorpe*, 447 F.3d 565, 568 (8th Cir. 2006).

Having concluded that Garcia-Hernandez possessed the firearm inside the motel room, we must determine if the firearm was possessed in furtherance of a drug trafficking crime. To convict a defendant for possession of a firearm in furtherance of a drug trafficking crime, the jury must find a nexus between the defendant's possession of the firearm and the drug offense. *Id.* "[S]imultaneous possession of drugs and a firearm is not alone sufficient to support a conviction." *United States v. Hamilton*, 332 F.3d 1144, 1150 (8th Cir. 2003). "Instead, the jury must be able to infer that the defendant's possession of the firearm facilitated the drug crime, through evidence that the firearm was used for protection, was kept near the drugs, or was in close proximity to the defendant during drug transactions." *United States v. Sanchez-Garcia*, 461 F.3d 939, 946–47 (8th Cir. 2006).

"The term 'furtherance' as used in § 924(c) should be given its plain meaning, '[t]he act of furthering, advancing, or helping forward.'" *United States v. Hamilton*,

-12-

332 F.3d 1144, 1149 (8th Cir. 2003) (quoting *United States v. Lomax*, 293 F.3d 701, 705 (4th Cir. 2002)). Steburg testified that Garcia-Hernandez pointed the gun at him while demanding payment for previously fronted drugs. Viewing this evidence in the light most favorable to the verdict, we conclude that Garcia-Hernandez's possession, brandishing, and pointing of a firearm at Steburg—one of his methamphetamine customers—was intended to frighten him into paying the money owed for the previously distributed drugs. *See Hamilton*, 332 F.3d at 1149 (finding defendant's shooting at customers was intended to frighten them into returning drugs that he believed one of them had stolen). We believe that Garcia-Hernandez's actions could reasonably be construed as advancing the drug conspiracy because by displaying the firearm and pointing it at Steburg, Garcia-Hernandez reduced the likelihood that Steburg or others who heard about the incident would attempt to forego payment on their drug debts. *See id.* (finding displaying and firing gun at drug customers for perceived theft of drugs was in furtherance of drug distribution conspiracy because it reduced the likelihood that customers or others would attempt to steal drugs in the future); *see also United States v. Bordeaux*, 436 F.3d 900, 904 (8th Cir. 2006) ("We have long recognized the role of firearms in protecting drugs or drug proceeds.") (internal quotations and citation omitted).

Having found that Garcia-Hernandez possessed a firearm in furtherance of a drug trafficking crime, we must decide whether Rolon-Ramos's actions at the motel aided and abetted Garcia-Hernandez's possession of the firearm in furtherance of the conspiracy. "To establish aiding and abetting liability under 18 U.S.C. § 2, the government must prove that the defendant had a 'purposeful attitude,' defined as affirmative participation which at least encourages the perpetrator." *United States v. Ivey*, 915 F.2d 380, 384 (8th Cir. 1990) (quoting *United States v. Baumgarten*, 517 F.2d 1020, 1027 (8th Cir. 1975)).

We conclude that the jury in this case could reasonably infer that Rolon-Ramos's actions of preventing Steburg's exit by locking and blocking the motel room

door constituted sufficient "affirmative participation" and "purposeful attitude." These actions, at a minimum, supported Garcia-Hernandez's unlawful possession of the firearm in furtherance of the drug conspiracy. Rolon-Ramos's actions allowed Garcia-Hernandez to confront Steburg—while pointing a gun at him—about the money owed for the previously fronted drugs. Although the evidence is not overwhelming, viewed in the light most favorable to the jury's verdict, the evidence is sufficient to uphold Rolon-Ramos's conviction for aiding and abetting Garcia-Hernandez's possession of a firearm in furtherance of a drug trafficking offense.

### III. *Conclusion*

Accordingly, we affirm Rolon-Ramos's convictions for conspiracy to distribute methamphetamine, pursuant to 21 U.S.C. §§ 841(a)(1) and 846, and aiding and abetting the possession of a firearm in furtherance of a drug trafficking crime, pursuant to 18 U.S.C. §§ 924(c) and 2(a); reverse the methamphetamine amount attributed to Rolon-Ramos; and remand the case to the district court for resentencing consistent with this decision.

_____