# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 45193

STATE OF IDAHO,                                )
                                               )
     Plaintiff-Respondent,            )     **Boise, February 2019 Term**
                                               )
v.                                             )     **Opinion filed: March 28, 2019**
                                               )
RICHARD ALAN WILSON, aka RICHARD               )
BURRELL, RICHIE B. WILSON,                     )     **Karel A. Lehrman, Clerk**
                                               )
     Defendant-Appellant.             )

Appeal from the District Court of the Third Judicial District of the State of Idaho, Canyon County. Hon. James C. Morfitt, District Judge.

The judgment of the district court is affirmed.

Eric Don Fredericksen, State Appellate Public Defender, Boise, for Appellant. Sally J. Cooley argued.

Hon. Lawrence G. Wasden, Idaho Attorney General, Boise, for Respondent. Jeffery D. Nye argued.

_____

MOELLER, Justice

Following a jury trial, Richard Wilson was convicted of two counts of aiding and abetting trafficking in methamphetamine. He now appeals on the grounds that the State failed to present sufficient evidence to support either conviction. For the reasons stated, we affirm.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On April 7, 2016, an undercover police officer arranged to meet Regina Jones ("Jones") in a shopping center parking lot to purchase two ounces of methamphetamine. Jones had contacted the officer earlier that day offering to sell one ounce of methamphetamine for $650 or two ounces for $1200. The officer agreed to buy two ounces and made arrangements to complete the sale at a public location around 6 p.m. Jones informed the officer she would be in a white Ford Expedition with the front hood open. When the officer arrived, he located the Expedition and parked near it. Jones was in the driver's seat of the Expedition, and a man—later identified as Richard Wilson ("Wilson")—was standing alongside it near the opened hood of the vehicle.

1

The officer texted Jones to tell her that he had arrived and described the car he was in. Jones then exited the Expedition and entered the officer's car to complete the sale. After some conversation, Jones handed the officer a plastic bag containing two smaller plastic bags, each containing a white crystal substance, and the officer gave Jones $1200 cash. The substance was later identified as methamphetamine.

Meanwhile, Wilson had closed the hood and re-entered the Expedition on the passenger side. Shortly after the exchange of the methamphetamine and the cash, Jones exited the officer's vehicle. The officer returned to the police station to verify the substance and weigh the contents of the bags received from Jones. The small bags each contained just under one ounce[1] of methamphetamine: 27.76 grams and 27.89 grams, respectively.

Twenty days later, on April 27, 2016, Jones and the undercover officer met again to complete another methamphetamine sale. This time Jones agreed to sell one ounce for $600 cash. Once again, Jones and the officer met in a public place, this time a restaurant parking lot, and Wilson accompanied Jones. When they arrived, Wilson, who was driving, exited the Nissan, opened the hood, and waited outside. The officer then texted Jones, telling her that he was parked nearby. Jones exited the car and entered the officer's vehicle. After some conversation, Jones gave the officer a clear plastic bag containing a white crystal substance and the officer gave Jones $620 in pre-marked bills.[2] Jones then exited the vehicle. While Jones was in the officer's car, Wilson had lowered the hood on the Nissan and re-entered it on the driver's side. Both parties left the scene. The officer again returned to the police station to weigh and identify the substance received from Jones. The bag weighed 25.91 grams and the substance it contained was positively identified as methamphetamine.

Later that day another officer, responding to a call from dispatch, pulled over the Nissan that Wilson and Jones were driving. During the stop, the officer searched Wilson, the driver of the vehicle, and discovered $600 cash in his front pants pocket. The serial numbers on the bills obtained from Wilson's pocket matched the serial numbers of the bills given to Jones by the undercover officer earlier that day. This money was seized by the officer and taken into evidence. Several days later, on May 2, 2016, Wilson contacted the police department about retrieving the money, which he claimed he had received from work and family members.

---

[1] There are 28.35 grams in an ounce.

[2] The undercover officer testified at trial that $600 was the agreed-upon price for the ounce of methamphetamine; however, he unintentionally paid Jones $20 extra.

Thereafter, Wilson was charged with two counts of aiding and abetting Jones in trafficking methamphetamine in violation of Idaho Code sections 18-204 and 37-2732B(a)(4): one count for the April 7th sale (Count I) and one count for the April 27th sale (Count II). A jury determined that Wilson was guilty of both counts and he was later sentenced to concurrent unified sentences of ten years, with three years fixed, and ordered to pay restitution and mandatory minimum fines of $10,000 per count. Wilson appeals.

## II.   STANDARD OF REVIEW

"This Court will uphold a judgment of conviction entered upon a jury verdict so long as there is substantial evidence upon which a trier of fact could conclude that the prosecution proved all essential elements of the crime beyond a reasonable doubt." *State v. Kralovec*, 161 Idaho 569, 572, 388 P.3d 583, 586 (2017) (internal quotations and citation omitted). "Evidence is substantial if a reasonable trier of fact would accept it and rely upon it in determining whether a disputed point of fact has been proven." *State v. Smith*, 161 Idaho 782, 790, 391 P.3d 1252, 1260 (2017) (internal quotations and citation omitted).

> On appeal, where a defendant stands convicted, the evidence is viewed in the light most favorable to the prosecution and the reviewing court is precluded from substituting its judgment for that of the jury as to the credibility of witnesses, the weight of the evidence and the reasonable inferences to be drawn from the evidence.

*State v. Allen*, 129 Idaho 556, 558, 929 P.2d 118, 120 (1996) (internal quotations omitted).

We freely review issues of statutory interpretation. *State v. Owens*, 158 Idaho 1, 3, 343 P.3d 30, 32 (2015). When interpreting a statute, we "begin[] with the statute's plain language." *Id.* The statute is considered as a whole, and words are given "their plain, usual, and ordinary meanings." *Id.* "When the statute's language is unambiguous, the legislature's clearly expressed intent must be given effect, and we do not need to go beyond the statute's plain language to consider other rules of statutory construction." *Id.*

## III.   ANALYSIS

**A. The State Presented Substantial Evidence that Wilson Aided and Abetted Trafficking in Methamphetamine by Represented Amount, as Alleged in Count II.**

**1.   The State was not Required to Prove that Wilson Knew the Quantity of Methamphetamine Jones Represented She was Selling or Delivering.**

3

Wilson argues that there was insufficient evidence presented at trial to convict him of Count II of the Indictment because the State failed to present evidence that he knew Jones had represented to the officer that she would deliver "one ounce" of methamphetamine to him on April 27. He argues that no evidence establishing his actual knowledge of the amount of methamphetamine Jones represented she was selling to the undercover officer was submitted to the jury. Thus, he claims that there was insufficient proof at trial that he possessed the requisite shared criminal intent to be found guilty as an aider and abettor.

Wilson was charged with aiding and abetting trafficking in methamphetamine in accordance with Idaho Code sections 18-204 and 37-2732B(a)(4). Section 18-204 provides that "[a]ll persons concerned in the commission of a crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense or aid and abet in its commission . . . are principals in any crime so committed." I.C. § 18-204. This Court has further clarified that

> [t]o 'aid and abet' means to assist, facilitate, promote, encourage, counsel, solicit or incite the commission of a crime. A person who aids and abets the commission of a crime must knowingly participate by any of such means in bringing about the commission of a crime. It contemplates a sharing by the aider and abettor of the criminal intent of the perpetrator.

*Smith*, 161 Idaho at 787, 391 P.3d at 1257 (internal citations and quotations omitted).

Idaho Code section 37-2732B(a)(4) sets forth the fundamental elements of trafficking in methamphetamine:

> [a]ny person who knowingly delivers, or brings into this state, or who is knowingly in actual or constructive possession of, twenty-eight (28) grams or more of methamphetamine or amphetamine or of any mixture or substance containing a detectible amount of methamphetamine or amphetamine is guilty of a felony, which felony shall be known as "trafficking in methamphetamine or amphetamine."

Additionally, section 37-2732B(c) delineates the type of proof required to establish the amount of methamphetamine for a trafficking charge: "[f]or the purposes of subsections (a) and (b) of [section 37-2732B] the weight of the controlled substance *as represented by the person selling or delivering it is determinative* if the weight as represented is greater than the actual weight of the controlled substance." (Emphasis added). Wilson argues that section 37-2732B requires knowledge by the principal—and by extension any aider and abettor—of the actual weight or of

4

the represented weight of the methamphetamine. This argument is unavailing based on the plain language of the statute.

The State must prove two critical elements beyond a reasonable doubt to sustain a conviction of trafficking in methamphetamine under section 37-2732B(a)(4). First, that there was a knowing possession, delivery, or bringing of the methamphetamine into Idaho; and second, that the weight of the substance was 28 grams or greater. I.C. § 37-2732B(a)(4). As noted, to prove weight, subsection (c) allows the State to use either the actual weight of the substance, or the weight "as represented by the person selling or delivering it" if that representation is greater than the actual weight. I.C. § 37-2732B(c). Knowledge of the weight is not an element of trafficking in methamphetamine under section 37-2732B, for either the principal or any aider and abettor. Although the substance's weight must be proven by its actual weight or represented weight per subsection (c), the State is not required to prove that either the principal, or any aider or abettor, knew the actual weight of the substance. By its very terms, subsection (c) only requires the State to prove that a single representation of weight was made by either the principal *or* any aider and abettor. Such evidence is sufficient proof of weight to sustain a conviction of both the principal and the aider and abettor.

Long-standing principles of statutory construction support this view. "Because the best guide to legislative intent is the words of the statute itself, the interpretation of a statute must begin with the literal words of the statute." *Gordon v. Hedrick*, 159 Idaho 604, 609, 364 P.3d 951, 956 (2015) (internal quotations omitted). "If the words [of a statute] are in common use, they should be given the same meaning in a statute as they have among the people who rely on and uphold the statute." *Purco Fleet Services, Inc. v. Idaho State Dept. of Fin.*, 140 Idaho 121, 124, 90 P.3d 346, 350 (2004). In interpreting subsection (c), we note the use of the word "or." "The word 'or' is disjunctive, meaning that it is a conjunction used to introduce an alternative." *State v. Herren*, 157 Idaho 722, 726, 339 P.3d 1126, 1130 (2014). Use of the disjunctive under these circumstances clearly indicates that a single representation—from either "the person selling" the methamphetamine or "[the person] delivering it"—would *alone* be sufficient to prove weight under section 37-2732B. *See Herren*, 157 Idaho at 726, 339 P.3d at 1130 (holding that the use of the word "or" in a court order "unmistakably convey[ed]" that terms in a list were distinct from one another); *Marek v. Hecla, Ltd.*, 161 Idaho 211, 216, 384 P.3d at 975, 980 (2016) (holding that the use of "or" separating terms in a workers' compensation statute "clearly

indicated" that the terms were distinct and that either, standing alone, could trigger an exception under the statute). Therefore, either the person selling *or* the person delivering the methamphetamine may make a representation as to weight; and this representation is sufficient to prove weight under section 37-2732B for both the principal and any aiders and abettors.

Wilson has cited several federal cases to support his contention that the State is required to prove that he, as an accomplice, had prior knowledge of the amount of methamphetamine: *Rosemond v. United States*, 572 U.S. 65 (2014); *United States v. Rolon-Ramos*, 502 F.3d 750 (8th Cir. 2007); *United States v. Hayes*, 342 F.3d 385 (5th Cir. 2003); and *United States v. Gomez-Rosario*, 418 F.3d 90 (1st Cir. 2005). *Hayes*, *Gomez-Rosario* and *Rolon-Ramos*, all deal with drug distribution conspiracy convictions under 18 U.S.C. § 924(c) and 21 U.S.C. § 841.[3] The holdings in these cases are based on the respective federal courts' interpretations of a federal trafficking statute under which a defendant had been convicted of conspiracy; they do not address the question Wilson raises in this appeal—whether the evidence was sufficient for his conviction of aiding and abetting drug trafficking under Idaho law. As such, they are inapposite.

Wilson relies most heavily on *Rosemond* to argue that the State was required to prove that he had advance knowledge of the amount of methamphetamine being sold by Jones. *Rosemond* concerned a drug deal in which Rosemond and another man accompanied a woman to a drug sale, but the buyer absconded with the drugs instead of paying for them. *Rosemond*, 572 U.S. at 67. Rather than give chase, one of the accompanying men fired shots after the fleeing buyer. *Id.* Because it was unclear who fired the shots, the government used alternate theories to charge Rosemond with violating 18 U.S.C. § 924(c) by either: (1) discharging a gun while committing a drug trafficking offense or (2) aiding and abetting in a drug trafficking offense while carrying a gun. *Id.* at 67–68. On the aiding and abetting theory, the U.S. Supreme Court held that because the offense at issue was a "combination crime," requiring both the carrying or using of a firearm *and* the commission of the acts constituting the drug trafficking crime, the defendant could only be convicted of aiding and abetting in the overall crime if he had the

---

[3] 21 U.S.C. § 841 makes it "unlawful for any person knowingly or intentionally—(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; or (2) to create, distribute, or dispense, or possess with intent to distribute or dispense, a counterfeit substance," and provides for a minimum 10 year prison term for trafficking 50 grams or more (or 500 grams of a mixed substance) or a minimum 5 year prison term for trafficking 5 grams or more (or 50 grams mixed substance). Unlike Idaho's drug trafficking statutes, 21 U.S.C. § 841 encompasses intent to a greater degree and does not allow for represented weight to be substituted for actual weight. *See* I.C. § 37-2732B(c).

required state of mind for both parts of the crime—meaning that he needed to have advance knowledge of the presence of a firearm to be convicted of the crime. *Id.* at 76–78.

In the same vein, Wilson argues that the State needed to prove that he had advance knowledge of the amount of methamphetamine for his trafficking conviction to be upheld; otherwise, the most he could be guilty of is aiding and abetting in the delivery of methamphetamine. However, unlike 18 U.S.C. § 924(c), which requires proof of drug trafficking *and* firearm possession, section 37-2732B is not a combination crime. It contains only a description of the acts constituting the crime of "trafficking in methamphetamine," and indicates the proof required for conviction of that crime. For conviction, the State needed to prove that (1) Wilson was aware that Jones was selling methamphetamine, (2) either Wilson or Jones represented to the buyer that the amount to be sold weighed "28 grams or more," and (3) Wilson acted with the intent to assist her in the transaction. Accordingly, the analysis underlying *Rosemond* is not applicable.

While the State must prove that Wilson knew that Jones possessed or was selling methamphetamine, it is not required to prove that he had advance knowledge of the actual or represented amount.[4] Section 37-2732B(a)(4) is unambiguous and we must apply it as written. Section 37-2732B reflects a policy choice by the legislature: that individuals who participate in the transport and sale of illegal substances, and those who aid and abet those participants, undertake this behavior at the risk that their actions could amount to trafficking, which would expose them to mandatory sentencing.

The totality of the circumstances convincingly establishes that Wilson shared the requisite criminal intent with Jones, even if he did not know the precise amount of methamphetamine represented. The State presented evidence that (1) Wilson drove Jones to a prearranged site for the April 27 sale, (2) Wilson lifted the hood of the car to signal to the officer

---

[4] Under this statutory scheme, although Jones apparently shorted the buyer by selling him less than the one ounce he paid for, it is possible that she may have implicated an unwitting Wilson in a trafficking crime by representing to the buyer that the methamphetamine weighed more than one ounce. In other words, even if Jones told Wilson that she was selling less than an ounce, he would still be bound by her false representation to the buyer. While we recognize that the wording of the statute might lead to potentially harsh outcomes, we also are mindful that the clear legislative policy behind Idaho's current drug trafficking statutes is to impose significant consequences for all who participate in drug transactions of considerable size. *See* I.C. § 37-2739B ("The legislature hereby finds and declares that trafficking in controlled substances in the state of Idaho is a primary contributor to a societal problem that causes loss of life, personal injury and theft of property, and exacts a tremendous toll on the citizens of this state. To afford better protection to our citizens from those who traffic in controlled substances, the fixed minimum sentencing contained in subsections (b) and (c) of this section is enacted.").

that they were there, (3) Wilson admitted to accompanying Jones to provide "protection" for her during the transaction, and (4) after the sale Wilson drove away with Jones. Additionally, later that same day, the police found $600 in cash matching the serial numbers of the cash given to Jones—almost 97% of the proceeds of the sale—in Wilson's front pants pocket. The jury also viewed video of Wilson's interview with police containing his admission that he "sort of" was "in the game," or involved in dealing drugs, because he accompanied Jones to deals for protection and she gave him free "dope" and lunch for doing so. The cumulative effect of such proof provides substantial evidence from which a reasonable jury could determine that Wilson shared criminal intent and culpability with Jones, even if his knowledge of the actual amount of the methamphetamine is imputed by law.

### 2. The State Presented Substantial Evidence that Jones Made a Representation to the Officer that Met the Weight Requirements of Section 37-2732B(c) for Count II.

Wilson also argues that the State did not present sufficient evidence on Count II that Jones made a representation to the officer that she intended to sell him one ounce (28.35 grams) on April 27. As indicated above, the actual weight of the package received from Jones on April 27 was 25.91 grams, several grams short of the 28 grams required by section 37-2732B(a)(4)(A). Thus, to proceed with a charge under that section, the State needed to rely on the represented weight, as allowed by Idaho Code section 37-2732B(c). Because "represented" is not defined by Title 37 of the Code, Wilson argues that the ordinary meaning of the word should be used, which he argues is a "presentation of fact—either by words or conduct—made to induce someone to act, esp. to enter into a contract." Citing *Black's Law Dictionary* (10th ed. 2014). He argues that the State did not present any evidence that Jones herself stated or indicated by her conduct that the April 27 package was an ounce, but instead relied on testimony from the officer that he was "supposed to be getting an ounce of Methamphetamine for $600" on that date.

The State does not dispute the use of the dictionary definition of "represented," arguing instead that the definition used by Wilson encapsulates Jones' behavior perfectly—that by her words and conduct she indicated her intent to sell the officer an ounce of methamphetamine. The State's argument is persuasive.

Prior to the April 27 meeting, the officer testified that he communicated with Jones by cell phone, "specifically" asking for an ounce, that Jones told him that she did not have "it" with

8

her, and that she had to go to a friend's house to get "it." He testified that he understood from that conversation that "he was supposed to be getting an ounce of methamphetamine for $600." Then, later that day, Jones met with the officer and gave him the package of methamphetamine for $600,[5] which is identical to the price paid per ounce in the April 7 transaction—indicating that $600 was consistent with the going rate for an ounce of methamphetamine. This is substantial evidence from which a jury could reasonably conclude that Jones, as the seller, was representing the amount of the methamphetamine to be one ounce, which satisfies the "28 grams or more" language of the statute.[6] As such, it was sufficient evidence of the amount of methamphetamine, in accordance with section 37-2732B(c).

**B. The State Presented Substantial Evidence that Wilson Knew Jones was Selling Methamphetamine in both Counts I and II.**

Finally, Wilson argues that the State did not present sufficient evidence that he knew Jones was selling methamphetamine to the officer, so his convictions as to both Counts I and II should be vacated. He argues that the transcript of the police interview provided by the State showed him admitting to accompanying Jones when she does "deals," and even that he received free "dope" and occasionally lunch for his services, but never identified what type of "dope" was involved. Wilson argues that the term "dope" could refer to another substance, such as marijuana, and since the State failed to prove this essential element of the crime at trial, his convictions as to both counts cannot be upheld.

Here, viewing the evidence in the light most favorable to the prosecution, it seems clear that Wilson knew Jones was selling methamphetamine. The testimony at trial established that Jones was a methamphetamine dealer. The record also establishes that $600 was the going rate for an ounce of methamphetamine.[7] Wilson accompanied Jones to two sales, one on April 7 and one on April 27, both involving the sale of an illicit substance for approximately $600 per ounce. On April 7, the officer paid $1,200 for two ounces, and on April 27, he paid $620 for one ounce. In both instances, the substance sold was later determined to be methamphetamine. The pre-

---

[5] As noted previously, the officer actually paid $620 by mistake.

[6] Although each of the three baggies of methamphetamine at issue in this case weighed just under the one-ounce weight represented, Wilson has not argued, nor does the record support an inference, that he and the principal were intentionally "shorting" the undercover officer as part of a scheme to deliberately sell customers less than 28 ounces of methamphetamine in order to avoid the consequences of a trafficking charge. Regardless, under Idaho's statutory scheme, they are bound by the represented amount.

[7] Although counsel suggested at oral argument that Wilson could have believed the substance being sold was marijuana, there is no evidence in the record from which the jury could reasonably infer that the going rate for marijuana at the time and place of this incident was $600 per ounce.

marked bills discovered in Wilson's pocket shortly after the April 27 sale offer concrete evidence that he was aware of the amount of money generated by the sales, and there was no evidence presented at trial that Jones sold any other illicit substances besides methamphetamine. Further, Wilson admitted to participating in the drug trade in his interview with the officers, and to assisting Jones by being present at sales and offering "protection." This is substantial evidence from which a reasonable jury could infer that Wilson knew that he was assisting Jones in the sale of methamphetamine.

## IV.    CONCLUSION

For the reasons stated above, we conclude that the State provided substantial evidence for the jury to conclude beyond a reasonable doubt that Wilson aided or abetted in the trafficking of what was represented to be 28 grams or more of methamphetamine. Accordingly, we affirm Wilson's judgment of conviction for both Counts I and II.

Chief Justice BURDICK, and Justices BRODY, BEVAN and STEGNER **CONCUR.**