# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 47109

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | |
| | ) | |
| **Plaintiff-Respondent,** | ) | **Boise, May 2021 Term** |
| | ) | |
| **v.** | ) | **Opinion Filed: October 26, 2021** |
| | ) | |
| **JORDAN DAVID SPENCER,** | ) | **Melanie Gagnepain, Clerk** |
| | ) | |
| **Defendant-Appellant.** | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho**,** Ada County. Deborah A. Bail, District Judge.

The judgment of the district court is <u>vacated </u>on Count I and<u> affirmed</u> on Count II.

Eric D. Fredericksen, State Appellate Public Defender, Boise, for appellant Jordan David Spencer. Sally J. Cooley argued.

Lawrence G. Wasden, Idaho Attorney General, Boise, for respondent State of Idaho. Andrew V. Wake argued.

_____

BEVAN, Chief Justice.

This is an appeal from a judgment of conviction for drug-related offenses. A grand jury indicted Jordan Spencer for three counts of felony trafficking in heroin, one count of felony possession of methamphetamine, one count of felony possession of bath salts with intent to deliver, and one count of misdemeanor possession of drug paraphernalia. After a jury trial, Spencer was found guilty on all counts. Spencer timely appeals two of the six counts of which he was convicted, arguing that there is insufficient evidence to sustain his conviction on one count of trafficking in heroin and that the district court erred when it admitted the out-of-court statements of the State's confidential informant because those statements violated his Sixth Amendment right to confront witnesses. For the reasons below, we vacate the conviction as to Count I of felony trafficking in heroin. We affirm Spencer's conviction of trafficking heroin as charged in Count II.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.    Factual Background

1

On September 27, 2018, detectives with the City of Boise Police Department and the regional FBI task force orchestrated a controlled purchase of heroin with the cooperation of a female confidential informant (CI).[1] This controlled purchase occurred at an apartment on West Fairfield Avenue in Boise, Idaho. The apartment was originally a single residence with an attached garage, but it had been converted into two units after the garage was renovated into a living space. Before the controlled purchase, surveillance was conducted on the residence, and Jordan Spencer (Spencer) was seen coming and going from the converted garage apartment. The purchase was arranged through a series of text messages between the CI and a contact named "J" on the CI's cell phone. The CI wore an audio monitoring device during this controlled purchase.[2] The CI was searched thoroughly, driven to the purchase location by a detective, and given $300 of "buy funds" from the Boise Area Narcotics & Drug Interdiction Team (BANDIT) field commander. Next, the CI went inside the converted garage apartment for roughly three minutes, during which there was an unintelligible conversation between the CI and a male. Subsequently, the CI emerged without the $300 but with a small baggie containing about 3 ounces of what tested presumptively positive for heroin through a field test. This result was later confirmed by the Idaho State Forensic Laboratory.

Several days later, on October 3, 2018, the CI assisted with a second controlled purchase at the same location. Again, this purchase was arranged via text messages between the CI and "J" on the CI's phone. This time, the CI wore a video recording device. This video captured the CI's encounter with Spencer and a third party (Spencer's girlfriend) inside the converted garage apartment, where the CI exchanged $300 of "buy funds" (this time provided by the FBI task force) for another baggie containing about 3 ounces of a dark substance which tested presumptively positive for heroin through a field test. This result was also later confirmed by the Idaho State Forensic Laboratory.

Detectives later secured a search warrant for the premises, which was executed on October 17, 2018. Spencer and his girlfriend were present in the converted garage apartment, and four other

---

[1] This CI's relationship with law enforcement developed after the CI was a passenger of a vehicle subject to a traffic stop. The driver was arrested for an outstanding warrant, and it was discovered that the CI had concealed drugs on her person. The CI provided several names helpful to the detectives, who determined she would be a good candidate as a CI.

[2] This audio recording was virtually inaudible and ultimately not admitted at trial. The detective monitored the audio in real-time and testified that he recognized the CI's voice and another male voice inside the residence, with no other voices on the recording.

individuals were in the main residence. The only way to access the converted garage apartment from the main residence was through a unique door, much like a trap door, which could be operated from the garage side only. Spencer originally barricaded himself in a back bedroom, but he ultimately opened the bedroom door after being informed a canine would apprehend him. Drugs and drug paraphernalia were found in the converted garage apartment, including about 2 grams of what later tested positive as black tar heroin, about 2 grams of methamphetamine, and 10.76 grams of bath salts.

**B.      Procedural History**

On November 27, 2018, Spencer was indicted by a grand jury charging six counts: three counts of felony trafficking in heroin (in violation of Idaho Code section 37-2732B(a)(6)(A)), and single counts of felony possession of methamphetamine (in violation of Idaho Code section 37-2732(c)), felony possession of bath salts with intent to deliver (in violation of Idaho Code section 37-2732(a)), and misdemeanor possession of drug paraphernalia (in violation of Idaho Code section 37-2734A). Spencer pleaded not guilty to all charges.

A jury trial was held the next year. For reasons that were never explained, the CI did not testify. During trial, the State sought to admit both recordings of the controlled purchases. First, the State sought to admit the video recording of the second controlled purchase on October 3, 2018, purportedly as partial foundation for admission of the audio recording of the first controlled purchase on September 27, 2018. Spencer objected, arguing that the video recording contained testimonial hearsay from the CI that, if admitted, violated his right to confront witnesses against him because the CI did not testify. The State argued that it was unclear how the *video* itself could be testimonial, suggesting that the video could be admitted without sound, and further that the CI's comments during the video recording were contextual and not being offered for the truth of the matter asserted. The district court overruled Spencer's objection and admitted the video recording.

The State then sought to admit the audio recording of the first controlled purchase on September 27, 2018, offering it as evidence of the transaction between Spencer and the CI. Spencer again objected, raising the "[s]ame objections that [he had] previously stated." The district court reviewed the recording, and ultimately held it would not help the jury:

> I don't see that it would be at all helpful to the jury. I made a facetious comment earlier about old folks like me being a little bit hard of hearing. I was not so hard of hearing that I could not hear what was going on in the recording. It's just indecipherable. I'm not going to admit it at this point.

3

Even so, the jury had heard from Detective Andreoli, who testified that while he monitored the audio in real-time, he recognized the voice of the detective who drove the CI to the Fairfield apartment, the CI's voice, and another male voice inside the residence, with no other voices on the recording. Spencer did not object to Detective Andreoli's testimony.

At the close of the State's case, Spencer moved for a judgment of acquittal as to Counts I and II, arguing the State had not met its burden because it failed to produce the CI as a witness. Spencer argued, particularly as to Count I, a conviction could not be sustained solely on the detective's testimony that he had heard no other individuals in the Fairfield apartment during the September 27, 2018 controlled purchase. The State countered: (1) the video admitted on Count II unmistakably showed Spencer handing the CI the baggie of heroin; (2) the Count I purchase occurred in the same location; (3) both purchases were set up by contact with the same phone number saved as "J" in the CI's phone; (4) and that heroin was found in the same back bedroom that Spencer emerged from on the day the search warrant was executed.

The district court denied Spencer's motion stating, "I understand to a certain extent it may be a circumstantial case, but I believe there's still sufficient circumstances to go before the jury for a determination."

Spencer then exercised his right to remain silent, and the defense rested. The case was submitted to the jury, which returned a verdict of guilty on all counts. The district court sentenced Spencer on Counts I, II, and III to three years fixed followed by twelve years indeterminate for an aggregate sentence of fifteen years. On Count IV, Spencer was sentenced to three years fixed followed by four years indeterminate. Spencer was sentenced on Count V to three years fixed followed by two years indeterminate. Finally, on Count VI, Spencer was sentenced to one year fixed. All sentences were ordered to be served concurrently. Spencer was also ordered to pay restitution. Spencer timely appealed.

## II.    STANDARD OF REVIEW

> When a violation of a constitutional right is asserted, we will defer to the trial court's factual findings unless those findings are clearly erroneous. *State v. Hooper*, 145 Idaho 139, 142, 176 P.3d 911, 914 (2007). This Court exercises "free review over the trial court's determination as to whether constitutional requirements have been satisfied in light of the facts found." *Id.* Whether admission of evidence violates a defendant's right to confront adverse witnesses under the Sixth Amendment's Confrontation Clause is a question of law over which this Court exercises free review. *Id.*

*State v. Stanfield*, 158 Idaho 327, 331, 347 P.3d 175, 179 (2015).

4

"This Court 'will uphold a judgment of conviction entered upon a jury verdict so long as there is substantial evidence upon which a rational trier of fact could conclude that the prosecution proved all essential elements of the crime beyond a reasonable doubt.'" *State v. Kralovec*, 161 Idaho 569, 572, 388 P.3d 583, 586 (2017) (quoting *State v. Severson*, 147 Idaho 694, 712, 215 P.3d 414, 432 (2009)). "On appeal, where a defendant stands convicted, the evidence is viewed in the light most favorable to the prosecution and the reviewing court is precluded from substituting its judgment for that of the jury as to the credibility of witnesses, the weight of the evidence and the reasonable inferences to be drawn from the evidence." *State v. Sheahan*, 139 Idaho 267, 286, 77 P.3d 956, 975 (2003) (quoting *State v. Allen*, 129 Idaho 556, 558, 929 P.2d 118, 120 (1996)).

## III. ANALYSIS

### A. We vacate Spencer's conviction on Count I because it is not supported by substantial evidence on which a jury could conclude the prosecution proved all essential elements beyond a reasonable doubt.

The jury returned a verdict on Count I, a charge of felony trafficking in heroin which alleged:

> That the defendant, JORDAN D. SPENCER, on or about the 27th day of September 2018, in the County of Ada, State of Idaho, did knowingly possess and/or deliver Heroin, to-wit: two (2) grams or more of Heroin, a Schedule I narcotic controlled substance, or any salt, isomer, salt of an isomer thereof, or of any mixture or substance containing a detectable amount of any such substance.

On appeal, Spencer advances three arguments in support of his position that the evidence against him was insufficient to support his conviction. First, Spencer argues the State failed to prove beyond a reasonable doubt that he possessed or delivered heroin on September 27, 2018. Second, Spencer contends he was not personally observed at the home on the date of the transaction, had various roommates with access to the house and garage, was not observed speaking to or interacting with the CI at or near the time of the transaction, and that the funds used to purchase the heroin were never found in his possession. Third, Spencer submits under *State v. Burnside*, 115 Idaho 882, 771 P.2d 546 (Ct. App. 1989), that the State needed to show more than Spencer's proximity to the location of the transaction to sustain his conviction.

In response, the State counters by pointing to the evidence that establishes Spencer's actual or constructive possession of the heroin delivered on September 27, 2018. The State contends Spencer and his girlfriend were the only occupants of the converted garage apartment, which was equipped with cameras and motion detectors, as well as being barricaded from the inside. The

State also notes that when the search warrant was executed on October 17, 2018, heroin and large amounts of paraphernalia were found in the back bedroom. The State also argues that "even if someone else sold [the heroin] on his behalf, the evidence shows that Spencer was 'not simply a bystander but, rather, had the power and intent to exercise dominion and control' over the apartment and its contents, including the heroin sold on September 27[.]" (quoting *State v. Rogerson*, 132 Idaho 53, 58, 966 P.2d 53, 58 (Ct. App. 1998)). Also, the State contends that there was no evidence that any of the occupants in the main unit had any connection to the narcotics transaction in the converted garage apartment. The State distinguishes *Burnside*, 115 Idaho 882, 771 P.2d 546, arguing that "there is no affirmative evidence that Spencer did not possess the heroin on September 27 and someone else did."

This Court reviews the sufficiency of evidence to sustain a criminal conviction for substantial evidence "upon which a rational trier of fact could conclude that the prosecution proved all essential elements of the crime beyond a reasonable doubt." *Severson*, 147 Idaho at 712, 215 P.3d at 432. "[S]ubstantial evidence may exist even when the evidence presented is solely circumstantial or when there is conflicting evidence." *Id.* Possession of a controlled substance may be actual or constructive. *See State v. Warden*, 97 Idaho 752, 754, 554 P.2d 684, 686 (1976). In turn, "[c]onstructive possession may be joint or exclusive." *State v. Randles*, 117 Idaho 344, 347, 787 P.2d 1152, 1155 (1990). "Control of the premises in which the drugs are found has often been used to infer knowledge . . . However, such an inference cannot be made, absent other circumstances, where the accused does not have exclusive possession of the premises." *State v. Blake*, 133 Idaho 237, 242, 985 P.2d 117, 122 (1999) (citing *Warden*, 97 Idaho at 754, 554 P.2d at 686).

The jury was instructed as follows on the heroin trafficking counts, including Count I:

> Before the defendant may be convicted of Trafficking in Heroin, as charged in Counts I, II, and III the state must prove each of the following facts beyond a reasonable doubt.
> 1. The crime occurred in Idaho on or about the date alleged in the information.
> 2. The identity of the defendant as the person who committed the crime.
> 3. The defendant actually or constructively possessed a controlled substance by having control over the substance or by having the right to control the substance; or, with respect to Counts I and II, the defendant delivered the controlled substance to another person or persons.

6

4. The controlled substance was heroin, or any mixture or substance containing a detectable amount of heroin;
5. The defendant had knowledge of the nature of the substance possessed;
6. The controlled substance weighed at least 2 grams;
7. The defendant committed the act charged with general criminal intent.

The jury was also instructed on possession:

There are two types of possession: actual possession and constructive possession. Actual possession requires that a person knowingly and intentionally have direct physical control over a thing. Constructive possession does not require actual physical possession but does require that a person knowingly have the right of control over a thing, either directly or through another person or persons, and the intention to control it.

More than one person may be in possession of something if each knows of its presence and has the power and intention to control it.

Constructive possession exists when a connection between the defendant and the thing in question is sufficiently proven beyond a reasonable doubt as to give rise to a reasonable inference that the defendant was not simply a bystander but, rather, had the power and the intent to exercise dominion and control over the thing.

We conclude that the State presented insufficient evidence to sustain Spencer's conviction as to Count I. First, the State argued Spencer was an occupant of the garage unit, but the State could not establish Spencer was the *sole* occupant exercising exclusive control over the apartment—Spencer's girlfriend also occupied the garage unit. The State argues that occupants of the main unit could not enter the garage apartment unless a "pulley" system was activated to unlock the door between the two units, but the State presented no evidence that on September 27, 2018, this pulley system was in use to lock the door between the units. All evidence about the access between the main unit and the garage area—as well as the surveillance systems—came from the later executed search warrant. As a result, the State is not entitled to the inference that Spencer exercised sufficient exclusive control over the garage apartment and its contents to render him in constructive possession of everything inside the apartment. *See Blake*, 133 Idaho at 242, 985 P.2d at 122 (noting that control of the premises cannot be the sole basis for inferring knowledge—absent "other circumstances"—when a defendant does not have exclusive possession over the premises).

Nor did the State present sufficient evidence to establish that Spencer was present, much less delivered, the baggie of heroin to the CI. The audio recording of the first purchase (for Count I) was unintelligible and not admitted. The baggie of heroin the CI bought was never fingerprinted. The CI never testified, and therefore never provided testimony that it was Spencer she interacted

7

with that day. This lack of evidence was a tactical choice the State made, and in doing so, left a critical gap in the evidence.

We also reject the State's argument that Spencer has provided "no affirmative evidence that [he] did not possess the heroin on September 27." Spencer was not required to prove his innocence; the State was required to prove his guilt. For these reasons, we vacate the judgment as to Count I.

**B.      Admission of the CI's statements on the audio portion of State's Exhibit 34 (the video recording) did not violate the Confrontation Clause.**

The district court admitted State's Exhibit 34 over Spencer's objection that the CI's statements in the video recording constituted inadmissible hearsay and that the Confrontation Clause required that the CI be available for cross-examination. The district court did not explain its rationale for overruling Spencer's objection.

On appeal, Spencer argues that the CI's statements violated the Confrontation Clause because the statements "were testimonial in nature as they were made solely for purposes of criminal investigation and prosecution." In support, Spencer cites *State v. Smith*, 161 Idaho 782, 391 P.3d 1252 (2017), stating that the CI's statements implicate the Confrontation Clause. Spencer points out that despite the State's expectation that the CI would be available at trial, the State did not subpoena her, so Spencer never had a chance to cross-examine her. Spencer contends that "[t]he State will be unable to prove the error was harmless beyond a reasonable doubt."

In response, the State argues that the CI's comments in the video were introduced "only to provide context for Spencer's behavior, not to support the truth of any asserted matter." The State contends that Spencer has skipped the threshold inquiry for the Confrontation Clause—that the statements must be offered for the truth of the matter asserted to implicate the Confrontation Clause. The State also points to the factors delineated in *Smith*, arguing that even if the CI's statements were offered for that purpose, they are not testimonial. Finally, the State maintains that even if the district court erred, the error was harmless beyond a reasonable doubt because the video alone—without the audio—established that Spencer was guilty of Count II of felony trafficking in heroin.

"The Confrontation Clause provides that '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with witnesses against him.'" *Stanfield*, 158 Idaho at 332, 347 P.3d at 180 (quoting U.S. CONST. amend. VI). A reviewing court's inquiry under the Confrontation Clause focuses on the nature of the statements being made and whether the statement was

testimonial. *Davis v. Washington*, 547 U.S. 813, 824 (2006). Also, the Confrontation Clause is not triggered unless such testimonial statements are being offered for the truth of the matter asserted in them. *See Williams v. Illinois*, 567 U.S. 50, 57–58 (2012). Spencer's argument fails in both particulars.

### 1. *The CI's statements are not testimonial*.

The United States Supreme Court has recognized that "a statement cannot fall within the Confrontation Clause unless its primary purpose was testimonial." *Ohio v. Clark*, 576 U.S. 237, 245 (2015). Some statements are categorically testimonial: ex parte in-court testimony or its functional equivalent, extrajudicial statements in formalized testimonial materials, or "statements made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Crawford*, 541 U.S. at 51–52. "Testimony" is "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Id*. at 51. The Court later examined testimonial statements in the context of interrogations. *See Davis v. Washington*, 547 U.S. 813 (2006). But as was the case in *Crawford*, the Court declined "to produce an exhaustive classification of all conceivable statements—or even all conceivable statements in response to police interrogation—as either testimonial or nontestimonial." *Id.* at 822.

For statements that do not fit neatly into one of these interrogative categories, *see Smith*, 161 Idaho at 789, 392 P.3d at 1259, the U.S. Supreme Court has adopted the "primary purpose" test to determine the testimonial nature of a statement: "[A] statement is testimonial when 'the circumstances objectively indicate that . . . the primary purpose . . . is to establish or prove past events potentially relevant to later criminal prosecution.'" *Stanfield*, 158 Idaho at 332, 347 P.3d at 180 (quoting *Davis*, 547 U.S. at 822).

When assessing out-of-court statements under this paradigm, courts are to consider several factors to determine whether the *primary purpose* of the statement "is to establish or prove past events potentially relevant to later criminal prosecution." *See Clark*, 576 U.S. at 244. This inquiry mandates a review of the total picture, including "all the relevant circumstances." *Id.* (quoting *Michigan v. Bryant*, 562 U.S. 344, 369 (2011)). One of the relevant circumstances is whether the primary purpose of the statement is to establish facts of a past crime. *See Smith*, 161 Idaho at 788, 391 P.3d at 1258. Another factor "is 'the informality of the situation and the interrogation,'" *Clark*, 576 U.S. at 245 (quoting *Bryant*, 562 U.S. at 377), which points away from the statement being testimonial.

9

Applying these standards here, the CI's statements are not testimonial. First, the statements at issue were not elicited during a formal interrogation, or even during an informal interrogation; the video recorded events as they unfolded. The informal nature of the back-and-forth between the CI and Spencer supports this conclusion. This Court so held in a similar situation in *Smith*. We expressly noted the important distinction between "speaking about events *as they were actually happening*, rather than describing past events[.]" 161 Idaho at 788, 391 P.3d at 1258 (quoting *Davis*, 547 U.S. at 827) (internal marks and citations omitted).

In *Smith*, two undercover detectives were investigating the sale of illegal drugs and met a supplier named Shawn Kendle. *Id.* at 784, 391 P.3d at 1254. During the meeting, one detective was wearing a video camera, disguised from view. *Id.* Most of the recording's audio was unintelligible because of ambient noise. *Id.* At trial, as the video was played for the jury, prosecutors asked the detective what he was seeing "in this shot right here?" The detective answered: "The gentleman standing with his back in the green t-shirt to us is Mr. Kendle. He is standing at the bar talking to wh[o] he said was his person [the defendant – Ms. Smith] that could supply him with mushrooms." *Id.* at 785, 391 P.3d at 1255. The defense objected on hearsay and Confrontation Clause grounds. *Id.* On appeal, this Court held the purpose of the challenged statement was not to establish past events potentially relevant to a criminal prosecution. *Id.* at 788, 391 P.3d at 1258. Instead, the challenged statement recounted what the officers were told about an *ongoing event*. *Id.* at 789, 391 P.3d at 1259. We also noted the testimony was not elicited during a formal, or even informal, interrogation. It was volunteered. *Id.* As we recognized: "The Supreme Court has 'never suggested. . .that the Confrontation Clause bars the introduction of all out-of-court statements that support the prosecution's case. Instead, we ask whether a statement was given with the 'primary purpose of creating an out-of-court substitute for trial testimony.'" *Id.* at 787–88, 391 P.3d at 1257–58 (quoting *Clark*, 576 U.S. at 245).

Here, too, Spencer spoke freely to the CI as the events unfolded. Spencer was not coerced and was unaware the CI was wired or that the conversation was being preserved. The encounter between Spencer and the CI was nothing like an interrogation. *See Rhode Island v. Innis,* 446 U.S. 291, 300–01 (1980) (defining the functional equivalent of an interrogation as "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect"). Spencer volunteered statements to the CI in the same manner Kendle volunteered statements to the

undercover officers in *Smith*. Statements made unknowingly to undercover officers are nontestimonial. *Davis*, 547 U.S. at 825 (citing *Bourjaily v. United States*, 483 U.S. 171, 181–84 (1987), and noting that "statements made unwittingly to a Government informant" were "clearly nontestimonial").

Our holding is also supported by this Court's decision in *State v. Stanfield*, 158 Idaho 327, 347 P.3d 175 (2014), in which the Court examined whether the primary purpose of a non-testifying witness's implicit assertion of placing a label on slides was intended to establish a fact at trial or to serve as a mere conduit for the testifying expert's testimony. *Id.* at 338, 347 P.3d at 186. Though *Stanfield* reviewed testimonial statements in the context of an expert witness, the Court's reasoning is relevant to our analysis here.

At Stanfield's trial, a doctor testified to slides she examined containing tissue samples. *Id.* at 339, 347 P.3d at 187. The slides were marked with a label from a non-testifying laboratory technician. *Id.* The label documented that the technician received the tissue, added a stain to the slides, and identified the time she did so. *Id.* The doctor testified she could ascertain the time the stain was placed on the tissue and whether it was properly placed by comparing it to a control slide. *Id.* at 340, 347 P.3d at 188. As a result, this Court concluded the doctor did not rely on the technician's implicit assertion the slides were properly prepared because the doctor possessed personal knowledge of the fact based on her comparison to the control slide. *Id.* This Court also concluded the technician's act of labeling the slides had no probative value to Stanfield's guilt or innocence. Instead, this Court reasoned the technician did not alter the integrity of the slide, an assertion to which any person in the chain of custody could attest. *Id.* (citing *Melendez–Diaz v. Massachusetts*, 557 U.S. 305, 311 n. 1 (2009)).

Even though *Stanfield* addressed expert testimony, the rationale underpinning its holding remains sound: "for a statement—forensic or otherwise—to be deemed testimonial, it must have been made with a primary objective of creating an evidentiary record to establish or prove a fact at trial." *Stanfield*, 158 Idaho at 337, 347 P.3d at 175.

Under this reasoning, the CI's portion of the conversation here is nontestimonial. Examining the excerpted portion of the conversation at issue, there are only two statements by the CI that are relevant: "My guy's lookin to get more than a ball at a time…" and "I see, I see. Okay alright. Well I just need that ball so…." The remaining portion of the excerpt includes questions about price. Neither of these quoted statements can be accurately categorized as having a primary

11

purpose of creating an evidentiary record to establish or prove a fact at trial. The amount of heroin for which Spencer was charged was based not on the CI's statements, but on the weight of the substance in the baggie Spencer gave to the CI. This fact was established by direct evidence, not an out-of-court statement. The CI's statements on the recording functioned just like the laboratory technician's labels did in *Stanfield*.

None of the factors explained by the Supreme Court, and recognized by this Court, warrant finding the CI's statements were testimonial. As a result, the district court did not err in allowing the video, including the audible statements of the CI, to be admitted as evidence below.

### 2. *The CI's statements were not offered for the truth of the matter asserted.*

The CI's statements were not made solely to establish an unlawful purchase occurred. Instead, these statements identified *why* the CI was at Spencer's apartment and *what* the CI wanted to purchase. The conversation discussed events as they unfolded. Thus, the CI's statement did not establish the truth of the matters quoted above. Neither of the statements was offered to prove the truth of what the CI's buyer ostensibly wanted (an amount of drugs more than "a ball at a time") or that the CI just "need[ed] the ball . . . ." Absent the statements being offered to prove the truth of the matter uttered in the statement, the Confrontation Clause "does not bar the admission of such statements." *Williams v. Illinois*, 567 U.S. 50, 57 (2012). *See also Crawford*, 541 U.S. at 59 n.9 (the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.").

Spencer conflates the primary purpose of the recording with the primary purpose of the CI's statements on the recording. We acknowledge the recording was made to establish that an unlawful purchase occurred – and that the evidence was relevant for that purpose – but the focus of a Confrontation Clause analysis is not on the crime being committed, but on the *primary purpose* for which the CI made the statements. The primary purpose of the statements, explained by the United States Supreme Court and this Court, is determined by looking at the content of the CI's statements on the recording. Weighed against this standard, the primary purposes of the CI's statements here are not testimonial, nor are they to prove the truth of the matter asserted.

Thus, nothing establishes that the CI's questions were motivated, as a *primary purpose*, to perpetuate testimony for later use in a court proceeding, even though the entire drug buy was video recorded. None of the relevant circumstances establishes that the primary purpose of the statements

12

was to establish facts of a past crime; the CI's statements were made while engaging Spencer in the process of buying a "ball." Those statements were not made to perpetuate testimonial evidence.

The Supreme Court recognized that "it is in the final analysis the declarant's statements, not the interrogator's questions, that the Confrontation Clause requires us to evaluate." *Davis*, 547 U.S. at 822–23 n. 1. Still, "*Davis* requires a combined inquiry that accounts for both the declarant and the interrogator." *Michigan v. Bryant*, 562 U.S. 344, 367 (2011). Thus, the primary purpose of the statements made can most accurately be determined by looking to the contents of both the questions and the answers. *Id.* at 367–68. The Supreme Court summarized the need to look at the nature of the entire conversation as follows:

> A formal station-house interrogation, like the questioning in *Crawford*, is more likely to provoke testimonial statements, while less formal questioning is less likely to reflect a primary purpose aimed at obtaining testimonial evidence against the accused. And in determining whether a statement is testimonial, standard rules of hearsay, designed to identify some statements as reliable, will be relevant. In the end, the question is whether, in light of all the circumstances, viewed objectively, *the "primary purpose" of the conversation was to create an out-of-court substitute for trial testimony*.

*Clark*, 576 U.S. at 245 (emphasis added) (internal quotations and citations omitted).

We hold the CI's statements were not offered to prove the truth of the matter asserted and thus were not hearsay, I.R.E. 801(c)(2), and did not violate the Confrontation Clause.

## IV.   CONCLUSION

For these reasons, we vacate the judgment as to Count I because substantial and competent evidence does not support the jury's verdict beyond a reasonable doubt. We affirm the judgment as to Count II because admission of the CI's statements did not violate Spencer's rights under the Confrontation Clause.

Justices BRODY and BURDICK, CONCUR.

STEGNER, J., concurring in part and dissenting in part.

I concur with the majority's decision to vacate Spencer's conviction on Count I. However, I respectfully dissent from the majority's conclusion that the admission of the CI's statements in the audio portion of State's Exhibit 34 did not violate Spencer's confrontation clause rights. Instead, I would hold that the admission of the CI's statements and conduct on the recording violated Spencer's rights under the confrontation clause and that this error was not harmless. Accordingly, I would vacate Spencer's conviction as to Count II.

*1.* <u>Admission of the CI's statements and conduct on the recording violated Spencer's rights under the confrontation clause.</u>

Criminal defendants enjoy the right to confront their accusers. U.S. CONST. amend. VI, § 1. "[T]his provision[, also known as the confrontation clause,] bars admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had [] a prior opportunity for cross-examination." *State v. Anderson*, 162 Idaho 610, 616, 402 P.3d 1063, 1069 (2017) (quoting *Davis v. Washington*, 547 U.S. 813, 821 (2004)). If the objected-to evidence is offered for the truth of the matter asserted, the Confrontation Clause is implicated. A "core class" of testimonial statements has been described, nonexclusively, by the U.S. Supreme Court as:

> "ex parte in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially," . . . "extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions," *White v. Illinois*, [502 U.S. 346, 365 (1992)] (THOMAS, J., joined by SCALIA, J., concurring in part and concurring in judgment); [and] "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial[.]"

*Crawford*, 541 U.S. at 51–52.

As the majority notes, when a statement is not clearly testimonial, district courts must determine whether the "primary purpose" of the statement "is to establish or prove past events potentially relevant to later criminal prosecution." *See Ohio v. Clark*, 576 U.S. 237, 244 (2015). We have previously concluded that "a statement is testimonial when it is intended to be 'a weaker substitute for live testimony at trial.'" *Stanfield*, 158 Idaho at 333, 347 P.3d at 181 (quoting *Davis*, 547 U.S. at 828).

As a preliminary matter, I caution against the use of "context" as a default justification for evidence that may implicate the confrontation clause. This Court has rejected the doctrine of *res gestae*, and we are consequently suspicious of "context" arguments that mimic arguments in favor of so-called "*res gestae* evidence." *See State v. Kralovec*, 161 Idaho 569, 573, 388 P.3d 583, 587 (2017). When the State seeks to admit evidence containing statements of a witness who does not

14

testify at trial, it "should be prepared to make an offer of proof explaining in detail why, on the facts, the statement is relevant quite apart from its truth. When the purpose is legitimate, the task is not hard." 30 FED. PRAC. & PROC. EVID. § 6589 (2d ed.).

Next, I would conclude the CI's statements were offered for the truth of the matter asserted and were therefore hearsay. Although several other topics of conversation—all irrelevant to the transaction—were also recorded and played for the jury, the statements at issue involve the following conversation:

"So um – do you – . . . how much can you get? My guy's lookin' to get more than just a ball at a time . . . How much would a piece run? Do you know – like do you have a price idea on that?"

[Barely audible, Spencer seems to answer: "15."]

"I see, I see. Okay alrighty . . . Well I just need that ball so . . ."

[Again, barely audible, Spencer: "Okay."]

Notably, these statements played a significant part in the State's account of the second controlled buy. This conversation was referenced in the State's opening and closing arguments; the State characterized the conversation as an exchange about purchasing heroin and as proving Spencer's knowledge that this was a transaction where heroin was being sold. Although the State casts this evidence as "contextual" evidence, it is clear from the opening and closing arguments that the audio of the conversation was being offered precisely for the purpose of establishing the truth of the matter asserted: the CI's side of the conversation was about (1) the exchange of money (2) for heroin. Both of which were critical facts the State was required to prove to obtain a conviction. *See, e.g.*, *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 313 (2009) (noting that statements by analysts who did not testify were "certainly . . . testimony *against* petitioner, proving one fact necessary for his conviction—that the substance he possessed was cocaine") (italics in original). I am also not convinced that the CI's questions merely "explain" Spencer's responses. Spencer's responses are themselves barely audible, and the quoted cost for a "piece" would be unintelligible without the benefit of the CI's clarifying statements on the recording when she returned to the undercover vehicle and explained what Spencer had said.[3]

---

[3] There is no suggestion that the video was played in a truncated fashion, so this should be analyzed as though the video was played in full. At the end of this video, the CI can be heard explaining how Spencer answered her questions.

15

Further, the CI's statements were testimonial. On balance, the recording was undertaken solely for the purpose of establishing that the unlawful purchase occurred. The CI's side of the conversation references an ongoing crime—her purchase of a "ball" of heroin from Spencer—and it is a matter of common sense that the CI would expect that her recording of events would be used in the prosecution of the crime that subsequently occurred. She was wired and had been searched. In other words, the recording was intended to be a weaker substitute of live testimony at trial. *See Stanfield*, 158 Idaho at 333, 347 P.3d at 181. As a result, Spencer's rights under the confrontation clause were violated when the audio of the CI's statements was admitted at trial because the CI did not testify and could not be cross-examined by Spencer.

In addition to being offered for its truth and its testimonial nature, the exchange between Spencer and the CI recited above also painted Spencer as a frequent dealer of even *larger* sums of heroin than were charged in this case. The CI asked Spencer about the possibility of a future purchase of a "piece" of heroin by the CI's "guy" as opposed to "just [a] ball" that was purchased during the controlled buy. The State contends that this audio "provide[d] context for Spencer's behavior." This portion of the recording falls squarely within our definition of *res gestae* evidence: "*Res gestae* evidence is 'other acts that occur during the commission of or in close temporal proximity to the charged offense . . . .'" *Kralovec*, 161 Idaho at 573, 388 P.3d at 587 (quoting *State v. Blackstead*, 126 Idaho 14, 18, 878 P.2d 188, 192 (Ct. App. 1994)). "Evidence previously considered admissible as *res gestae* is only admissible if it meets the criteria established by the Idaho Rules of Evidence." *Kralovec*, 161 Idaho at 574, 388 P.3d at 588. Idaho Rule of Evidence 404(b) prohibits evidence of "other act[s]" to prove a person's character. I.R.E. 404(b)(1). The CI's reference to a potential *future* purchase of an even larger quantity of heroin than what Spencer was charged with should not have been admitted under the guise of either "contextual" or "other act[s]" evidence. This reference impermissibly portrayed Spencer as a frequent dealer of larger quantities of heroin; such an implication was outside the scope of the charged conduct and should not have been admitted without Spencer being afforded the opportunity to cross-examine the confidential informant.

2. This error was not harmless.

"The United States Supreme Court held that 'before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt.'" *State v. Garcia*, 166 Idaho 661, 673, 462 P.3d 1125, 1137 (2020) (quoting *Chapman v.*

16

*California*, 386 U.S. 18, 24 (1967)). "Harmless error is 'error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record.'" *Id.* at 674, 462 P.3d at 1138 (quoting *Yates v. Evett*, 500 U.S. 391, 403 (1991)). Under this inquiry, "[t]he probative force of evidence untainted by error against a defendant must be examined and weighed as against the probative force of the error itself." *Id.* at 675, 462 P.3d at 1139.

Admission of the CI's statements in violation of Spencer's rights under the confrontation clause was not harmless error. Despite the State's arguments to the contrary, the erroneous admission of the CI's assertions was important in relation to everything considered by the jury on the issues in dispute. The State was required to prove that Spencer "delivered" the substance to the CI. As to delivery, the CI's statements and assertive conduct communicated that a transaction was occurring, including the subject and price for this transaction. The State was also required to prove identity—that Spencer was the one who delivered the substance—and the CI's statements referred to Spencer by name. I cannot conclude, beyond a reasonable doubt, that admission of the CI's verbal and non-verbal assertions on the video recording was unimportant in relation to the other evidence considered by the jury.

As a final note, I return to Justice Scalia's comments in *Melendez-Diaz v. Massachusetts*: "The Confrontation Clause may make the prosecution of criminals more burdensome, but that is equally true of the right to trial by jury and the privilege against self-incrimination. The Confrontation Clause—like those other constitutional provisions—is binding, and we may not disregard it at our convenience." 557 U.S. at 325. Unfortunately, that is precisely what is being done in this case. Here, there is no indication that it would have been even an inconvenience for the State to produce the CI. In fact, it is left entirely unexplained why more was not done to present the CI as a witness. The CI was the only conceivable percipient witness for the State who could connect the purchase of heroin to Spencer in both Counts I and II, and yet the State did not even bother to subpoena her. Spencer's conviction has been procured, and unfortunately affirmed, without the only witness capable of tying him to the sale of heroin testifying.

As a result, I respectfully dissent. I would also vacate the judgment as to Count II.

Justice MOELLER, CONCURS.

17